MAE T. BUCKLEY *v.* BENJAMIN MUZIO, COMMISSIONER
OF THE DEPARTMENT OF MOTOR VEHICLES
(12683)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 13—decision released May 27, 1986

1

*John F. Gill,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Elizabeth Dee Bailey,* for the appellee (plaintiff).

DANNEHY, J. The defendant appeals from a judgment of the Superior Court sustaining the appeal of the plaintiff whose driver's license was suspended because she refused to submit to a chemical analysis of her blood, breath or urine.

The plaintiff, Mae T. Buckley, was arrested for operating a motor vehicle under the influence of intoxicating liquor. After arresting the plaintiff, the police officer requested the plaintiff to submit to a blood, breath or urine test and informed her that her motor vehicle operator's license would be suspended if she refused. The plaintiff refused to submit to any test and a written report of her refusal was sent to the defendant, Benjamin Muzio, commissioner of the department of motor vehicles. Following receipt of the report, the defendant sent a letter to the plaintiff to notify her that, effective March 19, 1983, her driver's license was suspended for ninety days because of her refusal to submit to a chemical test pursuant to General Statutes (Rev. to 1983) § 14-227b. The letter also informed the plaintiff that if she wished to request a hearing regarding the suspension prior to the imposition of the ninety day suspension, the starting date of her suspension would be stayed. The plaintiff requested and was granted a hearing before an adjudicator appointed by the defendant which resulted in an order suspending the plaintiff's driver's license for ninety days. The plaintiff then appealed from the adjudicator's decision to the Superior Court, *Bieluch, J.,* which rendered judgment sustaining the appeal. The defendant appealed to the Appellate Court, and we transferred the case here on our own motion. Practice Book § 3004A.

"Judicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. *Lawrence* v. *Kozlowski,* 171 Conn. 705, [707–708,] 372 A.2d 110 (1976). Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant." *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles,* 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (g).[1] "The court's ultimate duty is only to decide whether, in light of the evidence, the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of [his] discretion." *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 441, 423 A.2d 87 (1979); see also *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983).

The record before the adjudicator shows that police officer Brian Mullins on routine duty in a patrol car at about 1 a.m. on February 14, 1983, saw an automobile immobilized on the snow-covered median divider of Crooked Street in Plainville. Mullins investigated and found the plaintiff seated on the driver's side of the front seat of the car. The plaintiff was alone in the auto-

---

[1] General Statutes § 4-183 (g) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

mobile. The engine was running and the wheels spinning. Mullins asked the plaintiff to get out of the car. When she emerged from the car Mullins detected an odor of liquor on her breath. He noticed that her speech was slurred and her eyes bloodshot. Further, the plaintiff was unable to execute successfully roadside dexterity tests attempted at the request of Mullins and she could not recite the alphabet correctly. Mullins arrested the plaintiff for operating a motor vehicle under the influence of intoxicating liquor and transported her to the police station for processing. Upon arrival at the station, Mullins read a written form to the plaintiff apprising her of her constitutional rights, asking if she would submit to a blood, breath or urine test at her option, and advising her that if she refused to submit to a chemical test her driver's license would be suspended for ninety days. The plaintiff refused to submit to any chemical test and signed a document indicating her refusal. The defendant subsequently suspended the plaintiff's driver's license for ninety days on the ground that she refused to submit to a chemical test or analysis for intoxication under General Statutes (Rev. to 1983) § 14-227b.[2]

---

[2] General Statutes (Rev. to 1983) § 14-227b provides: IMPLIED CONSENT TO TEST. REFUSAL TO SUBMIT TO TEST. REVOCATION AND SUSPENSION OF LICENSE. HEARING. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at his option and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of subsections (d) and (e) of this section if he refuses to submit to such test, refuses to submit to any of such tests, the test shall not be given.

"(c) If the person arrested refuses to submit to such test or analysis, the police officer shall immediately revoke the motor vehicle operator's license or nonresident operating privilege of such person for a twenty-four hour

General Statutes § 14-227b (a) provides in relevant part that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine." If any person arrested for operating a motor vehicle under the influence of intoxicating liquor refuses to submit

period and prepare a written report of such refusal. Such written report shall be endorsed by a third person who witnessed such refusal. The report shall be made on a form approved by the commissioner of motor vehicles and shall be sworn to under penalty of false statement as provided in section 53a-157 by the police officer before whom such refusal was made. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle under the influence of intoxicating liquor or any drug or both resulting in erratic driving, a motor vehicle violation or a motor vehicle accident, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so.

"(d) Upon receipt of such report of a first refusal, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person for a period of ninety days. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to an immediate hearing before the commissioner. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege.

"(e) If a police officer revokes a person's operator's license or nonresident operating privilege for twenty-four hours pursuant to subsection (c), such officer shall (1) keep a written record of the revocation of a license, including the name and address of the person and the date and time of the revocation; (2) provide the person with a written statement of the time from which the revocation takes effect, the duration of the revocation, the location where the license may be recovered upon termination of the revocation and acknowledging receipt of the revoked license; and (3) provide the department of motor vehicles with a copy of the notice of revocation of the license of such person, the name and address of such person, the date and time of revocation and the ratio of alcohol in the blood of such person at the time of the alleged offense.

"(f) Upon receipt of a report of a second or subsequent refusal, the commissioner of motor vehicles shall immediately schedule a hearing concern-

to a chemical test or analysis, "the commissioner of motor vehicles shall suspend [his driver's license] for a period of ninety days." General Statutes § 14-227b (d).[3] Subsection (d) further provides that any person whose license has been suspended for noncompliance with the statutory test requirements "shall automatically be entitled to an immediate hearing before the commissioner. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege." The plaintiff conceded at the hearing before the adjudicator that Mullins had probable cause to arrest her for operating a motor vehicle under the influence of intoxicating liquor and subsequently arrested

ing the suspension of any license or nonresident operating privilege of such person. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle under the influence of intoxicating liquor or drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. Unless, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall suspend such license or operating privilege of such person for a period of one year for a second refusal to submit to such test and for a period of three years for any subsequent refusal.

"(g) The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable.

"(h) The state shall pay the reasonable charges of any physician who, at the request of a municipal police department, takes a blood sample for purposes of a test under the provisions of this section."

[3] The period of suspension was increased from ninety days to six months in 1983. General Statutes § 14-227b (d); Public Acts 1983, No. 83-534, § 2.

and charged her with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. She also conceded that she was the operator of the motor vehicle and that she refused to submit to a chemical analysis of her blood, breath or urine. Nonetheless, the trial court sustained the plaintiff's appeal on the ground that no evidence was introduced at the hearing which would "support a finding that the plaintiff understood the consequences of a refusal to take the requested chemical test or analysis." We find the trial court's ruling to be clearly erroneous. Practice Book § 3060 D.

The language of General Statutes § 14-227b (d) is plain and unambiguous. The hearing is expressly limited to the four issues enumerated above. The statute does not require the adjudicator to determine whether the motorist understood the consequences of his or her refusal to submit to chemical testing. The plaintiff did not challenge the constitutionality of General Statutes § 14-227b (d) in the trial court, and has not done so on appeal. Thus, the limited issue before the trial court was whether the adjudicator properly applied the statute *as written* to the facts of the case. The trial court's memorandum of decision clearly indicates that the adjudicator made the findings required by General Statutes § 14-227b (d). Having nothing more to determine, it was "inappropriate for [the trial court] to indulge in a microscopic search for technical infirmities in the [commissioner's] action . . . ." *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 519, 418 A.2d 883 (1979).

The requirement that an intoxicated motorist understand the consequences of a refusal to submit to chemical testing would render General Statutes § 14-227b functionally unworkable. Intoxicated persons invariably contend that they did not comprehend the nature of their acts. The trial court's holding in this case presumably would require the department of motor vehi-

cles to conduct hearings on the voluntariness of a motorist's refusal to submit to chemical testing. While General Statutes § 14-227b (b) requires the arresting officer to *inform* the motorist of the consequences of a refusal to submit, there is no additional requirement that the motorist *understand* what he or she has been told. A refusal to submit to chemical testing for purposes of an administrative sanction need not be knowing and intelligent, for it is not analogous to the waiver of constitutional rights by a person accused of a crime. A person has no constitutional right to withhold nontestimonial evidence when the state's demand is supported by probable cause. *South Dakota* v. *Neville,* 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983); *Schmerber* v. *California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State* v. *Grotton,* 180 Conn. 290, 294, 429 A.2d 871 (1980); *State* v. *Acquin,* 177 Conn. 352, 354, 416 A.2d 1209 (1979); see Practice Book § 775 et seq. The legislature has prescribed the circumstances under which chemical testing for intoxication is *mandatory.* That a motorist is given the choice to refuse the test, and thereby suffer the consequences, means only that the legislature has chosen to enforce mandatory testing for intoxication by the least oppressive means, and in such a manner as to avoid hostile encounters between the motorist and police.

General Statutes § 14-227b does not provide a judicial or administrative remedy for the failure of an arresting officer to inform the motorist of the consequences of a refusal to submit to chemical testing. On the facts of this case, however, that issue was not before the trial court and it is not before us. We hold only that General Statutes § 14-227b (d) means what it says and accordingly, that the commissioner, before suspending the plaintiff's license, was not required to find that she understood the consequences of a refusal to submit to chemical testing.

There is error, the judgment of the trial court sustaining the plaintiff's appeal is set aside and the matter is remanded with direction that the order of the commissioner of motor vehicles be reinstated.

In this opinion the other justices concurred.