## JAY F. CLARK *v.* BENJAMIN MUZIO, COMMISSIONER OF THE DEPARTMENT OF MOTOR VEHICLES

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 310257
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed September 18, 1986

*Clark, Slitt & Gerace,* for the plaintiff.

*John Gill,* assistant attorney general, for the defendant.

HAMMER, J. The plaintiff has taken this appeal from the suspension of his operator's license by the defendant commissioner after an administrative finding that

he had refused to submit to a chemical test required by § 14-227b of the General Statutes. His principal claim is that his request to contact his attorney after his arrest for operating under the influence of intoxicating liquor, a violation of § 14-227a, did not constitute a refusal to submit to the testing required by § 14-227b. He also raises two other issues on this appeal, first, that there was insufficient evidence to support the commissioner's finding that the officer had probable cause to arrest him on the criminal charge, and, second, that he was not advised by the officer of the length of the suspension that would be imposed if he refused to submit to the test.

An examination of the record discloses that the following evidence was presented to the defendant's adjudicator in the course of the administrative hearing conducted pursuant to § 14-227b (d) on the suspension of the plaintiff's license for noncompliance with the statutory test requirements.

On October 6, 1984, John P. Kraft, a New Britain police officer, was sent to investigate a collision in a church parking lot involving the plaintiff's automobile. When the officer arrived, the plaintiff was inside the building playing cards. The officer's report contains a notation that persons present at the scene identified the plaintiff as the operator of the car that struck the other vehicle, that they stated that he appeared to be intoxicated, and that they asked the officer, "How could you let this person drive on the road?" On the basis of the information given by the persons who had witnessed the incident in the parking lot, as well as his own observation of the plaintiff inside the church and the manner in which he performed a field sobriety test, the officer arrested him for operating under the influence of intoxicating liquor.

The arresting officer's report notes that the "[o]perator was informed of his constitutional rights" and that

he was also told that his license "would be suspended in accordance with the provisions of General Statutes § 14-227b" if he refused to submit to a blood, breath or urine test. The officer testified at the hearing that he told the plaintiff "that if he refused to take the test he would lose his driver's license," but that he did not tell him how long the suspension period would be. The plaintiff then told the officer that he wanted to talk to his lawyer before deciding whether to submit to a test. The officer noted on his report that the operator had refused to take the test "until I talk to my lawyer."

Under subsection (d) of § 14-227b, one of the four essential findings that must be made by the hearing officer in order to justify a person's license suspension for refusing to submit to a chemical test is that the police officer had probable cause to arrest him for operating under the influence of intoxicating liquor. See also *Buckley* v. *Muzio,* 200 Conn. 1, 6–7, 509 A.2d 489 (1986). If the administrative determination of such an issue is reasonably supported by the evidence in the record, it must be sustained. *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). This court, in its review of the agency's decision, "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." General Statutes § 4-183 (g).

Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense. *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *State* v. *Wilson,* 153 Conn. 39, 42, 212 A.2d 75 (1965). An arrest for driving under the influence of intoxicating liquor, just as an arrest made for any other criminal offense, may properly be made on a finding of probable cause which

is based on circumstantial, as well as direct evidence. See *State* v. *Kreske,* 130 Conn. 558, 563–64, 36 A.2d 389 (1944).

Section 54-1f (a) authorizes police officers to "arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act *or on the speedy information of others* . . . ." (Emphasis added.) The statute was passed "primarily to guide officers in dealing with persons believed to be committing, or to have committed, misdemeanors," such as that of operating a motor vehicle while under the influence of liquor or drugs. *McKenna* v. *Whipple,* 97 Conn. 695, 701, 118 A. 40 (1922). It permits the arresting officer to rely upon all of the factual circumstances that have been brought to his attention, including those based upon his own subsequent personal observations of the suspect which may serve to supplement and confirm the "speedy information" that he has received from other persons. *State* v. *Anonymous (1981–1),* 37 Conn. Sup. 755, 759, 436 A.2d 789 (1981).

The statements of the persons who had observed the plaintiff's operation of his car in the parking lot may not in themselves have been sufficient to justify the plaintiff's arrest based on "speedy information." They tended, however, to show that the officer had reasonable grounds to determine the accuracy of that information by questioning him, by observing his appearance and behavior, and the manner in which he performed the field sobriety test. See *Bath* v. *Heckers,* 522 P.2d 108, 111 (Colo. App. 1974). A police officer who does not actually see the operation of the vehicle, or an accident in which it was involved, may nevertheless have probable cause to arrest a person for driving the vehicle while under the influence of intoxicating liquor based upon statements made by those who saw him operate the vehicle supplemented by the officer's own

subsequent observations of the operator and his fitness to operate. *McKenna* v. *Whipple,* supra; *Bath* v. *Heckers,* supra.

The administrative record on this appeal reasonably supports the adjudicator's finding that the police officer had probable cause to arrest the plaintiff based on all of the facts and circumstances within his knowledge and of which he had reasonably trustworthy information from others.

The plaintiff's second claim on this appeal is that § 14-227b (b) requires the arresting officer to inform the operator of the exact period for which his license will be suspended in the event that he refuses to submit to a chemical test. The adjudicator's finding of facts concerning the plaintiff's refusal of testing is that "[t]he operator refused to submit to a chemical test or analysis after being warned of automatic suspension." The plaintiff argues that the language of subsection (b), under which the officer must inform the operator that his license "will be suspended in accordance with the provisions of subsection (d), (e), or (f) of this section if he refuses to submit to such test," required the officer to advise him that his license would be suspended for a six month period under subsection (d) which applies to first offenders such as the plaintiff.

It should be noted that the statutory language relied upon by the plaintiff makes no express reference to any particular period of suspension. In fact, the three subsections referred to each provide for a different period of suspension, namely, six months for a first refusal (subsection [d]); twenty-four hours post-arrest (subsection [e]), and one year for previous offenders (subsection [f]). Moreover, the last sentence of subsection (b) provides only that "[t]he police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident

operating privilege would be suspended if he refused to submit to such test."

The legislative history of the implied consent statute does not support the plaintiff's claim. Section 4 (b) of Public Acts 1982, No. 82-408, which provided for a ninety day suspension for a refusal to submit to testing, expressly required the arresting officer to inform the operator of the duration of the statutory suspension. Section 2 of Public Acts 1983, No. 83-534, however, which was the applicable law at the time of the plaintiff's arrest, not only increased the suspension period to six months, but also deleted the statutory language which expressly required that the operator be informed of its duration.

In any event, the critical portion of the warnings which must be given to an operator under implied consent statutes is the *fact* of suspension rather than its duration, and when an officer gives him such notice it clearly indicates to him "that refusing the test was not a 'safe harbor,' free of adverse consequences." See *South Dakota* v. *Neville,* 459 U.S. 553, 566, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983). The fact that the officer tells him that his refusal to submit to testing will result in the suspension of his license without reference to the applicable suspension period under the statute is sufficient to inform him of the consequences of his refusal. *Pryor* v. *State Department of Motor Vehicles,* 8 Wash. App. 953, 955–56, 509 P.2d 1018 (1973).

The record on this appeal establishes that the adjudicator's finding that the plaintiff was "warned of automatic suspension" if he refused to be tested is supported by the evidence and satisfied the statutory requirement that the arresting officer inform the operator of the consequences of such refusal. See *Buckley* v. *Muzio,* supra, 8.

The plaintiff claims that his request to contact his attorney after his arrest for operating under the influ-

ence of intoxicating liquor did not constitute a refusal to submit to testing. He argues that because § 14-227b provides that the operator can be asked to submit to testing only "after being apprised of his constitutional rights," including the right to counsel, the person arrested has at the least, a limited or qualified constitutional or statutory right to contact an attorney before deciding whether to accede to the request of the arresting officer.

Under the literal language of the sixth amendment, the constitutional right to counsel "requires the existence of both a 'criminal prosecution' and an 'accused.' . . ." *United States* v. *Gouveia,* 467 U.S. 180, 188, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984). Although §§ 14-227a and 14-227b are interrelated, they give rise to separate and distinct proceedings, the former dealing with criminal proceedings subsequent to arrest and the other dealing with civil administrative procedures concerning license suspension for refusal of testing subject to judicial review only upon appeal. *State* v. *Towry,* 26 Conn. Sup. 35, 40, 210 A.2d 455 (1965); see also *State* v. *Hanusiak,* 4 Conn. Cir. Ct. 34, 42, 225 A.2d 208 (1966). A person who is faced with the choice of whether to submit to chemical testing is subject only to the noncriminal sanction of license suspension and is not "a person accused of a crime" and "has no constitutional right to withhold nontestimonial evidence when the state's demand is supported by probable cause." *Buckley* v. *Muzio,* supra, 8.

It may be argued that the civil sanction of suspension is not triggered until there is an unequivocal refusal by the person arrested, and that the request by the officer to submit to a chemical test is made either for the purpose of introducing the test results as evidence in the criminal prosecution if there is consent to testing, or with the intention of offering his refusal to submit to a test in evidence at his trial under § 14-227a (f). Merely preparatory evidence gathering by the state,

such as a scientific analysis of the accused's blood, however, is not such a critical stage of a criminal prosecution as to afford him the constitutional right to counsel. *United States* v. *Wade,* 388 U.S. 218, 227–28, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The sixth amendment right to counsel, "[b]y its very terms . . . becomes applicable only when the government's role shifts from investigation to accusation." *Moran* v. *Burbine,* 475 U.S. 412, 430, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). "[A]n arrest, whether or not accompanied by a warrant, does not mark the start of adversarial judicial proceedings" which entitle a defendant to the presence of counsel. *State* v. *Falcon,* 196 Conn. 557, 561, 494 A.2d 1190 (1985).

The plaintiff also argues that even if there was no constitutional basis for his request to consult with counsel, the *Miranda* warnings required under the statute reasonably led him to believe that he had that right. It should also be noted in this connection that the requirement that *Miranda* warnings be given to persons who are subject to custodial interrogation has been extended to include misdemeanor traffic offenses, including operating under the influence of intoxicating liquor. *Berkemer* v. *McCarty,* 468 U.S. 420, 436, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

The fact that an arrested person is advised of his constitutional rights does not create a right which does not exist or to which he is not entitled as a matter of law. See *Schmerber* v. *California,* 384 U.S. 757, 766, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*" *South Dakota* v. *Neville,* supra, 564 n.15.

Neither the sixth amendment nor the due process clause gives an arrested driver "a right to consult with counsel before deciding whether to take a test that the

law says he is required to take . . . ." *Nyflot* v. *Commissioner of Public Safety*, 369 N.W.2d 512, 516–17 (Minn. 1985). Nevertheless, even though an arrested driver has no right to refuse, he does have an important decision to make, the kind of decision for which the advice of counsel arguably could be useful. Id., 517. "But, there being no right under the constitution to consult with counsel in this context, the decision whether or not to provide that right is one for the legislature to make." Id.

Section 2 (b) of Public Acts 1985, No. 85-596, effective October 1, 1985, now gives a driver "a reasonable opportunity to telephone an attorney prior to the performance of such test . . . ." A legislative amendment carries with it a presumption that it is effecting a change in the existing law. *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 21 n.6, 434 A.2d 293 (1980). Accordingly, the court concludes that at the time of the plaintiff's arrest, § 14-227b did not afford him a statutory right to consult with counsel before deciding whether to submit to a chemical test.

For the foregoing reasons, the plaintiff's appeal is dismissed.