[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, John J. Gally, appeals pursuant to General Statutes Section 4-183 to the superior court from a decision by the defendant, Commissioner of the Department of Motor Vehicles, to suspend plaintiff's driver's license for a period of six (6) months pursuant to General Statutes Section 14-227b.
FACTS
The following facts are taken from the police report filed by Officer Rhode and the transcript of the license suspension hearing. On January 12, 1990, Officer Rhode of the Manchester Police Department drove through Charter Oak Park at 1:00 a.m. and noticed that several cars, including the plaintiff's, were running and occupied in the parking lot of the park. [Return of Record (hereinafter "ROR"), Exhibit 1, Police Report of Officer Rhode (hereinafter "Police Report"), p. 3]. The cars parked there at the time were from Hungry Tiger which had just closed. [Police Report, p. 3; ROR, Exhibit 4, Transcript of the License Suspension Hearing, p. 9 (hereinafter "Transcript")]. At 2:00 a.m. Officer Rhode again drove through Charter Oak Park and found all the vehicles had left the parking lot except for the plaintiff's. (Police Report.) The car was still running and the plaintiff was slumped over the steering wheel passed out. (Police Report, p. 3.) Officer Rhode shut off the car and made several attempts to wake the plaintiff and remove him from the car. (Police Report.) During this time, the plaintiff wedged himself in the car and refused to get out of the vehicle. (Police Report, p. 3.) Officer Rhode radioed for help and three officers were later able to talk the plaintiff out of the car. (Police Report, p. 3.) After refusing to submit to any field sobriety tests, the plaintiff was arrested and brought to Manchester Police Headquarters. (Police Report, p. 3.)
While at Police Headquarters, the plaintiff telephoned and talked to his attorney. (Police Report, p. 3.) Officer Rhode asked the plaintiff to submit to a breathalizer test and apprised him of the consequences of failure of or refusal to take the test. (Police Report, p. 3.) The plaintiff CT Page 10374 refused to take the test or to sign a temporary license. (Police Report, p. 3.)
On January 24, 1990, the Department of Motor Vehicles notified the plaintiff that his license would be suspended for six (6) months beginning on February 16, 1990 pursuant toPublic Act No. 89-314 (i.e., 14-227b) for refusal to take a chemical alcohol test. (ROR, Exhibit 2, Suspension Notice.) The notice also notified the plaintiff that he may schedule a hearing prior to the effective date of the suspension.
The hearing was held on March 9, 1990 before Attorney Barry Goldberg ("the hearing officer"). The plaintiff appeared and was represented by counsel. By decision dated March 10, 1990, the hearing officer set forth his findings of fact and conclusions of law, and upheld the suspension of plaintiff's license for six months.
On April 6, 1990, the plaintiff filed this appeal to the superior court. In his appeal, the plaintiff challenges the hearing officer's decision on three grounds: (1) that the arrest of the plaintiff was without probable cause; (2) that the hearing officer failed to subpoena the arresting officer; and (3) that the hearing officer cited to the improper statute in the decision. The plaintiff's ex parte motion for stay of the agency's decision to suspend plaintiff's license pending this appeal was granted on April 26, 1990.
JURISDICTION
"Appeals to courts from administrative agencies exist only under statutory authority." Citizens Against Pollution Northwest, Inc. v. Connecticut Siting Council, 217 Conn. 143,152, 584 A.2d 1183 (1991) (Citations omitted). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Id. (Citations omitted). "Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." Id. (Citations omitted). "A procedural default that implicates subject matter jurisdiction cannot be waived and may be raised at any time." McQuillan v. Department of Liquor Control, 216 Conn. 667, 670,583 A.2d 633 (1990) (Citations omitted). Appeals from decisions of the commissioner or his designated hearing officer rendered pursuant to section 14-227b are governed by the Uniform Administrative Procedure Act (hereinafter "UAPA"). Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489 (1986).
A. Aggrievement CT Page 10375
Section 4-183(a) of the UAPA provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section." General Statutes Section 4-183(a) (rev'd to 1991). The fundamental test to determine whether a plaintiff is aggrieved is as follows:
 First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully [sic] establish that this specific personal and legal interest has been specifically and injuriously affected by the decision.
Connecticut Business Industries Assn., Inc. v. CHHC214 Conn. 726, 730, 573 A.2d 736 (1990) (Citation omitted). "`Aggrievement established if "there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected." [Citation omitted.]'" State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 300, 524 A.2d 636 (1987) (Citation omitted).
Under the above test, it has been held that "[o]ne whose license is suspended pursuant to Section 14-227b `is an aggrieved person within the meaning of General Statute Section 4-183(a) in that a specific, personal and legal interest, his license to drive, has been adversely affected.'" Lee v. DelPonte, 2 Conn. L. Rptr. 480, 481 (September 20, 1990, Zoarski, J.) [quoting Tarascio v. Muzio,40 Conn. Sup. 505, 507, 515 A.2d 1082 (1986, Vasington, J.)] vacated on other grounds by the appellate court. Therefore, the plaintiff in the present action is aggrieved.
B. Timeliness
A party appealing the decision of an administrative agency must serve the appeal on the agency that rendered the decision and file the appeal with the clerk of the court within forty-five (45) days of the mailing or personal delivery of the agency decision. General Statutes Section 4-183(c). In the present action, the decision by the Department of Motor Vehicles was rendered on March 10, 1990, the appeal was served upon the agency on April 4, 1990, and the appeal was filed on April 6, 1990. Therefore, CT Page 10376 plaintiff's appeal is timely under General Statutes Section 4-183.
DISCUSSION
A. Scope of Review
General Statutes Section 4-183(j) sets forth the scope of review given by the trial court over an administrative appeal:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that the substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
General Statutes Section 4-183 (j); see Buckley, supra, 3 n. 1. The court's duty is "`only to decide whether, in light of the evidence, the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of his discretion.'" Id. [quoting Burham v. Administrator, 184 Conn. 317, 322,439 A.2d 1008 (1981)]. The burden of proof is upon the plaintiff to prove that the commissioner acted contrary to law and in abuse of his discretion. Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 16-17, 327 A.2d 569 (1973); Dorman v. DelPonte, 41 Conn. Sup. 437 (1990, Fuller, J.). However, it is "inappropriate for [the trial court] to indulge in a microscopic search for technical infirmities in the [commissioner's] action." Brago v. Real Estate Commission,177 Conn. 515, 519, 418 A.2d 883 (1979); Buckley, supra, 7. The court must not disturb the factual findings of the agency if they are supported by the record, even though the court would have come to a different conclusion. Hospital of St. Raphael v. Commission on Hospitals and Health Care,182 Conn. 314, 318, 438 A.2d 103 (1980).
B. Probable Cause CT Page 10377
General Statutes Section 14-227b states that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine. . . ." In addition, "[i]f the person arrested refuses to submit to such test or analysis. . . the police officer, acting on behalf of the I commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license. . . ." General Statutes Section 14-227b(c). However, the person arrested "is entitled to a hearing prior to the effective date of the suspension. . . ." General Statutes Section 14-227b(d).
At the hearing, the hearing officer is limited to a determination of the following issues:
 (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one percent or more of alcohol, by weight, and (4) was such person operating the motor vehicle.
General Statutes Section 14-227b(f). If "the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege." General Statutes Section 14-227b(g).
The plaintiff claims that the hearing officer's decision affirming that the police officer had probable cause to arrest the plaintiff was "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." (Complaint, #7a).
A police officer has probable cause to arrest "when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense." Clark v. Muzio, 40 Conn. Sup. 512, 514, CT Page 10378516 A.2d 160 (1986, Hammer, J.) (citing Beck v. Ohio, 379 U.S. 89, 91,85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wilson,153 Conn. 39, 42, 212 A.2d 75 (1965). "An arrest for driving under the influence of intoxicating liquor just as an arrest made for any other criminal offense, may properly be made on a finding of probable cause which is based on circumstantial, as well as direct, evidence." Clark, supra., 514-515. For a police officer to have probable cause to arrest for driving while intoxicated, he/she must have reasonably trustworthy information that the person arrested had committed the requisite elements necessary to constitute the offense of driving while intoxicated. See Clark, supra, 514.
The elements of the crime of driving while intoxicated are contained in General Statutes Section 14-227(a):
 No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or . . . in any parking area for ten or more cares . . . while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of more of alcohol, by weight.
Connecticut courts have not discussed the issue of who bears the burden of proving that there was evidence of each of the above elements to support the hearing officer's determination of probable cause.
Therefore, in the present action, the court must examine the record in order to determine if there is substantial evidence showing that the parking lot was for ten or more cars, pursuant to General Statutes Section 14-277(a).
The only evidence relating to the location of the arrest is the police report filed by Officer Rhode and the parties' arguments at the license suspension hearing. The police report filed by Officer Rhode states that the location of arrest was Charter Oak Park. (Police Report, p. 1). In the Officer's description of the arrest, he states that he:
 drove through Charter Oak Park. The Hungry Tiger had just closed and several vehicles in the parking lot were occupied and running . . . . I again drove through Charter Oak Park and all vehicles were gone except for the accused's . . . .
CT Page 10379
(Police Report, p. 3) (Emphasis added). Thus, according to the police report, the arrest was made in a parking lot in Charter Oak Park with no specifications of the size of the parking lot.
At the hearing, the plaintiff's attorney admitted that the location of the arrest was a parking lot in a park: "The area my client was arrested is a park." (Transcript, pp. 6-7; see also Transcript, pp. 9-10). Although the hearing transcript does not reveal the size of the parking lot, however, the court does find that there is sufficient and substantial evidence to support the hearing officer's finding of probable cause.
The plaintiff further argues that even if the location of the arrest was for ten or more cars, the area was not a statutory parking lot under Section 14-227b. General Statutes Section 14-212(6) defines the term parking lot as "lots, areas or other accommodations for the parking of motor vehicles off the street or highway and open to public use with or without charge." General Statutes Section 14-212(6). The plaintiff argues that Manchester Code Section 12-8 states that Charter Oak Park "shall be closed to public use and travel daily from 10:00 p.m. to 6:00 a.m. of the following day." Thus, according to the plaintiff, the park was not open to the public at 2:00 a.m. when the plaintiff was arrested.
However, the Supreme Court has addressed the interpretation of the term "open to the public." In State v. Boucher, 207 Conn. 612, 541 A.2d 865 (1988), the court held:
 For an area to be "open to public use" it does not have to be open to "everybody all the time." (Citations omitted). The essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character. (Citations omitted).
State v. Boucher, supra, 615. In the present action, the plaintiff incorrectly argues that the "open to public" language in the statute refers to whether the parking lot is open or closed at a particular hour rather than whether the area is available to the public and not just some specific class of individuals. Thus, the parking lot in Charter Oak Park was, as a matter of law, open to the public within the CT Page 10380 meaning of Section 14-227a.
C. The Presence of the Arresting Officer at the Hearing
The plaintiff further argues that the plaintiff could not present evidence to the hearing officer concerning the size of the parking lot because the hearing officer failed to require the presence of the arresting officer at the hearing pursuant to Conn. Agency Regs. Section 14-227b-18. That section provides:
 (a) At the hearing the commissioner shall not require the presence and testimony of the arresting officer, or any other person, but the hearing officer may make an appropriate order, as authorized by Section 14-110 of the General Statutes, to obtain the testimony of such arresting officer or other witness, if the same appears necessary to make a proper finding on one or more of the issues stated in Section 14-227b(f) of the General Statutes. . . .
Conn. Agency Regs. Section 14-227b-18. (Emphasis added) While it is true that the hearing officer did not subpoena Officer Rhode for testimony, subsection b of that same regulation states that "[a] person arrested for an enumerated offense may at his own expense and by his own solicitation summon to the hearing the arresting officer. . . ." Conn. Agency Regs. Section 140227b-18(b). Since the plaintiff could have subpoenaed the arresting officer in the present action, the hearing officer's failure to subpoena the arresting officer was not improper.
D. Incorrect Citation by the Hearing Officer
Plaintiff's final claim briefed is that in the decision, the hearing officer incorrectly cited to Section 14-227b when finding probable cause rather than to Section 14-227a, which is the penal section of the statute. The court will not entertain this matter because the plaintiff failed to allege this ground for appeal in his complaint. A complaint is required in order to put the opposing party on notice of the claims against them. Farrell v. St. Vincent's Hospital,203 Conn. 554, 525 A.2d 940 (1987); Anatonofsky v. Goldberg,144 Conn. 594, 499, 136 A.2d 338 (1957). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." Farrell, supra, 557; Board of Education v. Commission on Human Rights and Opportunities, 177 Conn. 75, 77 411 A.2d 40 (1979); Lundberg v. Kovacs, 172 Conn. 229, 232, 374 A.2d 201 (1977). CT Page 10381
The plaintiff's complaint makes no mention of the hearing officer's supposed incorrect citation to the implied consent statute. Therefore, the defendant's claim cannot be entertained.
The court finds that there is substantial evidence to support the hearing officer's finding of probable cause, and the plaintiff's appeal is dismissed.
HON. ALLEN W. SMITH SUPERIOR COURT JUDGE