[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Commissioner of Motor Vehicles suspending the plaintiff's license for six months in accordance with the administrative license suspension provisions of Connecticut's implied consent law, Connecticut General Statutes 14-227b.
At the administrative hearing, plaintiff stipulated that the contested issues were 1) whether the police officer had probable cause to arrest him for operating while under the influence and, 2) whether the plaintiff refused to submit to the test or analysis.
I. Probable Cause to Arrest
Although the arresting officer did not testify at the hearing, the Record, including a four page police incident report, indicates:
On November 10, 1991, at approximately 1:55 a.m. on Route 2 in Pawcatuck, Connecticut, officer Fretard observed CT Page 10473 the accused's vehicle weaving and drifting across the centerline of the highway five times. The officer found the accused to be the operator and lone occupant of the vehicle. He was slumped down in the driver's seat and looked confused. The officer noted a strong odor of alcoholic beverage on the operator's breath. His speech was badly mumbled, his face was flush red and his eyes were red and glassy. The accused admitted to having "had a few" drinks. The accused did not follow a pen and stared straight ahead when attempting to perform a preliminary horizontal gaze nystagmus test. While awaiting arrival of a second officer, for approximately ten minutes, the accused fell asleep. When asked to exit his vehicle, he walked to the rear of it, he used the vehicle for support, and nearly fell. While performing field sobriety tests: a) the accused could not close his eyes without falling backward and had to be caught; b) he recited the alphabet mumbling badly to "U" and then named random letters; c) he could not pick up his foot off the ground; d) he could not stand normally without wobbling badly; e) he nearly fell each time he was asked to face in a different direction or change position; f) during a more thorough horizontal gaze nystagmus test, the accused wobbled badly and failed in all six clues. The police officer concluded that the accused's level of intoxication was extreme and he was taken into custody. Exhibit A, Police Incident Report.
At the hearing, plaintiff testified that he did not drive erratically or drift into the other lane, that he did not perform poorly on the sobriety tests, he did not drink enough to impair his ability to drive and alluded to "bad feelings" between the VFW of Stonington, of which the plaintiff was affiliated, and the Stonington Police Department. Transcript pp. 7-11; 17-20.
 . . .(O)ne of the four essential findings that must be made by the hearing officer in order to justify a person's license suspension for refusing to submit to a chemical test is that the police officer had probable cause to arrest him for operating under the influence of intoxicating liquor. . . .If the administrative determination of such an issue is reasonably supported by the evidence in the record, it must be CT Page 10474 sustained. . . .This court, in its review of the agency's decision, "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." General Statutes 4-183(g).
 Probable cause exists when facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense. . . ."
Clark v. Muzio, 40 Conn. Sup. 512, 514 (1986).
In the instant case, the hearing officer's finding that there was probable cause to arrest the plaintiff is amply supported by the record.
II. Refusal to Submit to Test
Plaintiff contends that his actions did not constitute a "refusal." At the hearing, plaintiff testified that he agreed to take a breathalizer test, tried three times and could not blow hard enough. Transcript pp. 11, 15. Plaintiff also testified that he agreed to provide a urine sample; however, since he had just gone to the bathroom before leaving the VFW he was unable to do so and plaintiff contended the officer would not wait the fifteen minutes he believed was necessary before he could do so. Id. pp. 11, 12. Plaintiff introduced into evidence Respondent's Exhibit A, a medical report from a routine physical examination, indicating an abnormal lung condition and testimony with respect to a lung condition, Id. p. 12, and problems with urinating with a possible cause of a wrongly inserted catheter during a prior hospitalization. Id. p. 15.
State's Exhibit A, the Stonington Police Report, indicates:
 "The first breath test was attempted at 0214 hours. He aborted the test by CT Page 10475 failing to blow enough air into the machine. The accused was then warned that the machine would only allow three attempts and he could then be charged with a refusal. The procedure was explained thoroughly and repeatedly. The accused aborted two more attempts in which the accused did not blow any air into the machine. The procedure was explained to the accused again. He now stated that he had only one lung and could not put enough air into the machine. The accused was allowed a second series of attempts at 0221 hours. The accused aborted all three attempts due to insufficient breath. It was noted that the accused was blowing past the tube and putting no air into the machine. . . .The accused was then offered the opportunity to provide a urine sample rather than be charged with refusal. The accused agreed to provide a urine sample. The accused was given more than an hour and a half to provide the urine sample but he claimed he was unable to urinate. The accused had fallen asleep in his chair during this time. The accused stated that he would probably not be able to urinate until the following afternoon. . ."
Id. pp 3-4.
The record also includes the A44 Officer's DWI Arrest and Alcohol Test Refusal or Failure Report, which indicates in Subsection F that the "analytical device was certified, analytical device was operated by a certified analyst, and analytical device was checked for accuracy in accordance with applicable state regulations." Defendant's Exhibit A.
 "This appeal is governed by General Statutes 4-183(j). Since the claim is that the plaintiff did not refuse to take the statutory test, the issue on review CT Page 10476 is whether the conclusion reached by the hearing officer is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." General Statutes 4-183(j)(5). In an appeal under this statute, the court does not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . .The credibility of witnesses is within the province of the administrative agency, and under the substantial evidence rule, if there is evidence that reasonably supports the commissioner's decision, that decision must be upheld. . .The plaintiff has the burden of proving that the commissioner, acting on the evidence before him, acted contrary to law and in abuse of his discretion. . . .Where, as here, the claim is that the agency made an incorrect decision based on the evidence before it, the court applies the substantial evidence rule, which allows reversal of the decision only if the conclusion reached was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. . . .The question on appeal is whether the commissioner has acted unreasonably, arbitrarily, illegally, or in abuse of his discretion. . . .
 The "substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, the evidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be reasonably inferred. . . .[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. "'
CT Page 10477
Dorman v. DelPonte, 41 Conn. Sup. 437, 441-442 (1990).
In the instant case, Hearing Officer Gutis found the following subordinate findings: "Officer is clear in his detail report on erratic driving. Officer clearly reports that respondent was not blowing into, but around the tube." Decision, Defendant's Exhibit A.
Considered in light of the entire record, and the purpose of review by this court, the decision of the hearing officer was not unreasonable, arbitrary, illegal or in abuse of his discretion. Therefore, this appeal is dismissed.
Schimelman, J.