[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff James P. Cornelio has appealed under Conn. Gen. Stat.4-183 from the decision of the Commissioner of Motor Vehicles ordering CT Page 11530 the suspension of his motor vehicle operator's license for a period of six months due to plaintiff's failure to take a blood alcohol content test pursuant to Conn. Gen. Stat. 14-227b.
On August 1, 1992, at 12:41 a.m., the plaintiff was clocked on radar by Officer Mark Buckley of the New Milford Police Department as travelling 61 miles per hour in a 45 mile per hour zone. The incident occurred on route 202 in New Milford. The officer stopped the plaintiff and detected an odor of an alcoholic type beverage on his breath, that his eyes were glassy and that his speech was slurred. The plaintiff agreed to submit to a series of field sobriety tests, which he failed. The plaintiff was placed under arrest and transported to police headquarters, where he was advised of his "Miranda" warnings and the consequences of refusing to submit to a chemical test. He refused to submit to a test of his urine, stating, "that's impossible."
As a result of this refusal, the officer revoked the plaintiff's operator's permit for twenty-four hours and issued him a temporary operator's license. Based on the police report of a failure, the plaintiff was notified that his license would be suspended effective September 5, 1992 unless an administrative hearing was requested. A hearing was requested and scheduled for August 20, 1992.
The plaintiff was represented by counsel at the hearing. Based on the testimony and documents admitted into evidence, the hearing officer, Attorney Jeffrey Donahue, rendered a decision on August 21, 1992, finding that: (1) the police officer had probable cause to arrest the plaintiff for a violation specified in section (b) of Conn. Gen. Stat.14-227b; (2) the plaintiff was placed under arrest; (3) the plaintiff refused to submit to a test or analysis; and (4) the plaintiff was operating the motor vehicle. As a result of these findings, the plaintiff's operator's license was suspended for a period of six months.
The plaintiff raises two issues on this appeal that there was no probable cause to make the arrest; and there was not a refusal.
"Appeals to the courts from administrative officers or boards exist only under statutory authority and, unless a statute provides for them, courts are without jurisdiction to entertain them." East Side Civic Assn. v. Planning Zoning Commission, 161 Conn. 558, 560. 290 A.2d 348 (1971). See also, Cannata v. Department of Environmental Protection, 215 Conn. 616,622, 577 A.2d 1017 (1990) ("The right to appeal a decision of an administrative agency exists only under statutory authority.")
"`Judicial review of the commissioner's action is governed by the CT Page 11531 Uniform Administrative Procedures Act (General Statutes, 4-166 through4-189), and the scope of that review is restricted. Lawrence v. Kozlowski,171 Conn. 705, 707-708, 372 A.2d 110 (1976). Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant.' C H Enterprises, Inc. v. Commissioner of Motor Vehicles,176 Conn. 11, 12, 404 A.2d 864 (1978); DiBenedetto v. Commissioner of Motor Vehicles, 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes4-183(j).[1] `The court's ultimate duty is only to decide whether, in light of the evidence, the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of [his] discretion.' Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981); Riley v. State Employees' Retirement Commission, 178 Conn. 438, 441, 423 A.2d 87 (1979); see also Persico v. Maher, 191 Conn. 384, 409, 465 A.2d 308 (1983)." Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489 (1986).
To prevail in this appeal the plaintiff bears the heavy burden of proving, inter alia, that substantial rights possessed by him have been prejudiced because the decision to suspend his operator's license is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Conn. Gen. Stat. 4-183(j)(5). See Conn. Gen. Stat. 4-183(j)(5) and (6); Lawrence v. Kozlowski, 171 Conn. 705,713, 714, 372 A.2d 110 (1976, cert. denied, 431 U.S. 969, 97 S.Ct. 2930,53 L.Ed.2d 1066 (1977). "Judicial review of an administrative decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639, 583 A.2d 906 (1990). "Substantial evidence" exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Id., 639-40; Lawrence v. Kozlowski, supra. What this means in the context of a license suspension decision under the implied consent law is that "[i]f the administrative determination of [the four license suspension issues set forth in 14-227b(f)] is reasonably supported by the evidence in the record, it must be sustained." Clark v. Muzio, 40 Conn. Sup. 512, 514,516 A.2d 160 (1986), affirmed, 14 Conn. App. 212, 540 A.2d 1063, cert. denied, 208 Conn. 809, 545 A.2d 1105 (1988). In this regard, the defendant submits that the record in the instant case does contain substantial evidence supporting the suspension decision.
 I
The quantum of evidence necessary to establish probable cause is less than the quantum necessary to establish proof beyond a reasonable doubt. State v. Mitchell, 200 Conn. 323, 336 A.2d (1986). In the instant case, the officer, having stopped the plaintiff for a moving motor CT Page 11532 vehicle violation, detected the smell of an alcoholic beverage on his breath, that his eyes were glassy and his speech slurred. Further, the plaintiff failed field sobriety tests. There was enough information in the possession of the officer at that time for a reasonable person to conclude that the plaintiff had been driving while intoxicated.
 II
The plaintiff's claim with respect to the refusal is that he did not refuse to perform the test, but rather, was unable to perform the test. Conn. Gen. Stat. 14-227b(j) provides: "The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable." No such evidence was introduced to show that it would be "inadvisable" for the plaintiff to have submitted to a urine test. Absent such evidence, the plaintiff cannot prevail on his claim. Angel Rivera v. State of Connecticut, Department of Motor Vehicles, #CV-90-0054564, Judicial District of Litchfield (February 28, 1991, Pickett, J.), at page 10.
The plaintiff's refusal was unequivocal based upon his own testimony. He stated:
 Q. To the extent that you were asked to perform the urine test, you were asked to perform a urine test involving giving two urine samples thirty minutes apart, correct? What's your response to that?
 A. When the question was initially asked, frankly, I found it an embarrassing and intrustive situation. I don't urinate in front of people, generally. Certainly never done it in front of a cop before; so I knew it was very difficult for me to urinate which I presumed was going to be the case.
 Q. Is there a scene, obviously, where Officer Buckley has testified that you had a conversation with him that was not videotaped that was most relevant about the issue of whether or not you in fact refused? Could you tell me whether or not you refused to take the test or whether or not you indicated you were unable to do the test?
 A. He came into the cell area a couple of times and asked me various questions at different times. One time he came in and said, "what about the test?" And I said, "That's impossible." That's the only other time that he talked about the test other CT Page 11533 than what he saw on the videotape. He also came in and asked a series of questions in which I recall he said you don't have to answer any of these questions. I said, "Fine, let's dispense with these questions. I'm not going to answer any of them."
 Q. And to that extent, again, there was the request for the urine test. Was it a result of your failure to get a hold of anybody, or was it that you couldn't perform the most important part of the urine test?
 A. I knew that if somebody would watch me urinate, I wouldn't be able to do it, and the fact is I hadn't been able to urinate.
At no time did Mr. Cornelio attempt to perform the test but rather "found it an embarrassing and intrusive situation." A personal feeling of false modesty cannot be a justifiable reason for refusing a test. Had the request been made by a female officer to a male suspect or a male officer to a female operator, a different situation might obtain. There is nothing in the transcript to justify the defendant's refusal to perform the test.
For the reasons stated the appeal is dismissed.
PICKETT, J.