LAWRENCE MARSHALL *v.* LAWRENCE F. DELPONTE,
COMMISSIONER OF MOTOR VEHICLES
(10302)

LAVERY, LANDAU and HEIMAN, Js.

Argued February 13—decision released April 14, 1992

*Cornelius F. Tuohy,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Priscilla J. Green,* assistant attorney general, for the appellant (defendant).

*Maria Chiarelli,* with whom, on the brief, were *Joseph Chiarelli* and *Tara Chiarelli,* for the appellee (plaintiff).

*Brian M. O'Connell, Norman B. Teague* and *Russell S. Palmer* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

HEIMAN, J. The defendant, the commissioner of motor vehicles for the state of Connecticut, appeals from the trial court's judgment sustaining the plaintiff Lawrence Marshall's appeal from the defendant's order suspending Marshall's driver's license for ninety days pursuant to General Statutes § 14-227b. The defendant claims that the trial court incorrectly concluded that the department of motor vehicles failed, at the license suspension hearing, to present evidence sufficient to prove that the plaintiff's blood-alcohol content (BAC) was equal to or greater than 0.1 percent by weight at the time of the alleged offense. We affirm the judgment of the trial court.

The following facts are pertinent to our resolution of this appeal. On November 21, 1990, at about 12:51 a.m., Officer Kimberly Quesinberry of the West Haven police department stopped the plaintiff's Dodge Polara after observing it being driven through a red light at the corner of Captain Thomas Boulevard and Savin Avenue in West Haven. Upon reaching the plaintiff, Quesinberry smelled alcohol on his breath and observed that his eyes looked glassy and his speech was slurred. Quesinberry then administered field sobriety tests to

the plaintiff, which he failed. On the basis of her observations, Quesinberry arrested the plaintiff for operating a motor vehicle while under the influence of intoxicating liquor or drugs or both, in violation of General Statutes § 14-227a.[1]

The plaintiff was transported to police headquarters where, after receiving the statutorily required warnings; see General Statutes § 14-227b (b); he agreed to submit to a breathalyzer test. The first test was administered at 1:27 a.m. and revealed a BAC of 0.178 percent. The second test was administered at 2:05 a.m. and revealed a BAC of 0.177 percent. Quesinberry then revoked the plaintiff's driver's license for twenty-four hours and issued him a temporary one. See General Statutes § 14-227b (c).

On November 30, 1990, the defendant notified the plaintiff that his driver's license was to be suspended for ninety days pursuant to General Statutes § 14-227b (d). The plaintiff then requested a presuspension hearing; see General Statutes § 14-227b (d) and (f); which was held before Brian C. Carey, a department of motor vehicle hearing officer, on December 22, 1990. The sole evidence presented at the hearing was an "Officer's DWI Arrest and Alcohol Test Refusal or Failure Report" signed by Quesinberry and the plaintiff's testimony. The report set forth, inter alia, the circumstances surrounding Quesinberry's stop of the plaintiff's car and her subsequent observations of him, the time of the stop, the plaintiff's performance on the field sobriety tests, the plaintiff's advisement of rights and consent to the intoximeter tests and the time and results of the intoximeter tests. The plaintiff testified that he had consumed two

[1] The plaintiff also was arrested for failure to obey a control signal, in violation of General Statutes § 14-219, and failure to carry mandatory insurance, in violation of General Statutes (Rev. to 1989) § 38-327 (now § 38a-371). Neither charge is at issue in this appeal.

vodka drinks, each containing one shot of vodka, at the Marriot Hotel in Trumbull just before leaving the hotel and being stopped by Quesinberry. He also testified to the circumstances surrounding the automobile stop, his arrest, the field sobriety tests and his being processed and administered the intoximeter tests at the police station. Although the state produced evidence regarding the plaintiff's BAC at the time the intoximeter tests were administered, no extrapolation of that data back to the time of the offense appears on the record.

Carey issued his decision on December 26, 1990, finding that (1) the police officer had probable cause to arrest the plaintiff for violating Public Acts 1989, No. 89-314 (now General Statutes § 14-227a), (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to the intoximeter tests, which indicated that his BAC was 0.1 percent or greater at the time of the offense, and (4) the plaintiff was operating a motor vehicle at the time of the offense. See General Statutes § 14-227b (f).[2] As a result of these findings, the defendant suspended the plaintiff's driver's license for ninety days.

The plaintiff appealed his suspension to the Superior Court, claiming, inter alia, that the defendant's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and

[2] General Statutes § 14-227b (f) provides in pertinent part: "The [driver's license suspension] hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . ."

that the record failed to disclose any basis for Carey's finding that the intoximeter test results indicated a BAC equal to or greater than 0.1 percent at the time of the alleged offense. The court sustained the plaintiff's appeal on two grounds. First, it ruled that the defendant failed to produce expert testimony regarding the plaintiff's BAC at the time of the alleged offense as required by our decision in *State* v. *Geisler,* 22 Conn. App. 142, 576 A.2d 1283, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990), vacated on other grounds, U.S.    , 111 S. Ct. 663, 112 L. Ed. 2d 657 (1991). Second, it found that the record was devoid of any evidence regarding the plaintiff's BAC at the time of the alleged offense. The court found, therefore, that Carey's determination that the plaintiff's BAC was equal to or greater than 0.1 percent at the time of the offense was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and that his suspension of the plaintiff's license constituted an abuse of discretion and prejudiced his substantial rights. It then sustained the plaintiff's appeal and ordered the defendant to return the plaintiff's original driver's license to him.

We first address the trial court's determination that our decision in *State* v. *Geisler,* supra, controls this case. *Geisler* involved a criminal prosecution for driving under the influence of liquor in violation of General Statutes § 14-227a, as well as other crimes. The defendant in *Geisler* drove a car that became involved in an automobile accident at approximately 3 p.m. on July 24, 1986. Id., 144. After the defendant was arrested, he consented to a breathalyzer test. Id., 159–60. The first test, administered at 4:08 p.m., indicated a BAC of 0.269. Id. The second test, administered at 4:41 p.m., indicated a BAC of 0.265. Id., 160. At trial, the defendant testified that he drank alcohol both before and after the accident. Id., 159. No expert testimony extrapolat-

ing the results of the breathalyzer tests back to the time of the accident was offered. Id. The defendant ultimately was convicted of driving while under the influence. Id., 144. After reviewing the legislative history of General Statutes § 14-227a, we concluded that our legislature "clearly indicated its intent that extrapolation testimony be required to prove a violation of our per se drunk driving statute." Id., 164. Because the state failed to produce this critical testimony, we reversed the defendant's conviction of driving while under the influence of liquor. Id., 170.

This case, unlike *State* v. *Geisler,* supra, involves an administrative license revocation proceeding under General Statutes § 14-227b, not a criminal prosecution under General Statutes § 14-227a. In a criminal case, the state must prove each element of the crime charged beyond a reasonable doubt. See *State* v. *Peruta,* 24 Conn. App. 598, 603, 591 A.2d 140, cert. denied, 219 Conn. 912, 593 A.2d 137 (1991). In an administrative action, however, the agency need only produce probative and reliable evidence to ensure that the proceedings are fundamentally fair. *Altholtz* v. *Dental Commission,* 4 Conn. App. 307, 310, 493 A.2d 917 (1985). Because the burden of proof is far higher in a criminal prosecution than in an administrative proceeding, we are not prepared to extend the rule of *Geisler* to a driver's license revocation proceeding. The trial court incorrectly held otherwise.

The trial court did not, however, base its finding that the plaintiff's appeal should be affirmed solely on its interpretation of *State* v. *Geisler,* supra. It also found that the defendant's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record because there was no evidence, expert or otherwise, indicating the plaintiff's BAC at the time of the offense. We agree.

In determining whether an administrative decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"; General Statutes § 4-183 (j) (5); "the reviewing court must apply a standard similar to that applied in judicial review of a jury verdict. Under this restrictive standard, the court must consider whether the evidence affords a substantial basis of fact from which the fact in issue can reasonably be inferred." (Citations omitted; internal quotation marks omitted.) *Martone* v. *Lensink,* 207 Conn. 296, 305–306, 541 A.2d 488 (1988). The evidence must be substantial enough "to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983). The trial court applied these standards properly in holding that the commissioner's ruling was clearly erroneous.

The record of the suspension proceeding discloses no evidence supporting Carey's finding that the plaintiff's BAC was equal to or greater than 0.1 percent at the time of the offense. Although the record contains the results of two intoximeter tests administered after the alleged offense, it contains no extrapolation of those results back to the time of the offense.

Similarly, the record does not indicate that Carey either relied on his own expertise in determining the plaintiff's BAC at the time of the alleged offense or attempted to take judicial notice of the plaintiff's BAC at the time of the alleged offense. See General Statutes § 4-178 (6). Even if he had, General Statutes § 4-178 (7) prohibited him from relying on either his own expertise or on judicial notice unless he first notified the parties in a timely manner in order to afford them an opportunity to contest that material. See *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428–29, 429 A.2d 910 (1980). Thus, even assuming,

without deciding, that extrapolation back of BAC data falls within the rubric of General Statutes § 4-178 (6), such extrapolation back cannot support the defendant's decision in this case because Carey failed to advise the parties of his intent to rely on either his special expertise or judicial notice.

The record discloses no evidence on which Carey reasonably could have found that the plaintiff's BAC at the time of the alleged offense was equal to or greater than 0.1 percent. Further, Carey failed to apprise the parties of his intent to rely on either his own expertise or judicial notice to establish the plaintiff's BAC at the time of the alleged offense. As a result, the evidence presented at the suspension hearing was insufficient to justify suspending the plaintiff's driver's license under General Statutes § 14-227b. The trial court properly found that the defendant's decision prejudiced the plaintiff's substantial rights, that the decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and that the decision was arbitrary, capricious and constituted an abuse of the defendant's discretion. See General Statutes § 4-183 (j) (5) and (6).

The judgment is affirmed.

In this opinion the other judges concurred.