[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes 4-183, the plaintiff, Patrick Neary, appealed the decision of the defendant, Louis Goldberg, Commissioner of Motor Vehicles ("The Commissioner"). The defendant suspended Mr. Neary's motor vehicle operator's license for ninety (90) days pursuant to Connecticut's "implied consent law," General Statutes 14-227b.
The relevant facts of this case, as revealed by the record, are undisputed. On August 4, 1991, at approximately 8:14 p. m., Torrington police officers arrived at the scene of a one car accident on Lovers Lane in Torrington. The automobile had struck a bridge and the plaintiff was seen exiting the automobile, appearing "intoxicated and/or injured. He walked around the rear of the vehicle and he kept shaking his head and said that he was seeing double. He was bleeding. . . [and] spitting and sylivia (sic) was running down his chin." Return of Record ("ROR"), Item 5 (State's Exhibit A. which includes the statement of witness Scott Stevens). Mr. Stevens watched as the plaintiff "started walking into the CT Page 3754 Country Wood Condos" and further "watched this male go into a Condo." ROR Item 5, Statement of Scott Stevens.
The record further indicates that Torrington police officers were approached by Ms. Kelly Kuchta, who asked if "`[he] was alright.'" ROR Item 5, Torrington Police Department Incident Report ("TPIR"), p. 3. Ms. Kuchta informed the officers that the automobile involved belonged to her boyfriend, the plaintiff. Ms. Kuchta then advised the officers that "Neary's condo unit was 42." ROR Item 5, TPIR, pp. 3-4.
Based upon the preceding information, Officer John Murphy went to the Country Wood Condominiums Unit 42, where he located Mr. Neary sitting on a couch clad only in underwear. ROR Item 5, TPIR p. 4; Statement of Officer John W. Murphy, p. l. The plaintiff told the officer that he had been drinking all day and that he had been a passenger in the car involved in the accident. ROR Item 5, TPIR p. 4; Statement of Officer Murphy, p. l. However, Mr. Neary refused to provide the officer with the driver's name. ROR Item 5, TPIR, p. 4; Statement of Officer Murphy, p. l. The plaintiff smelled of alcohol and had slurred speech. ROR Item 5, TPIR, p. 4; Statement of Officer Murphy, p. 2. The plaintiff, at the officer's request, dressed and accompanied the officer to the accident scene, where he was identified by Mr. Stevens as the man seen exiting the car. ROR Item 5, TPIR, p. 4; Statement of Officer Murphy, p. 2. The plaintiff was then asked to, and did, submit to a series of field sobriety tests, all of which he failed. ROR Item 5, TPIR, pp. 4-6. Consequently, the plaintiff was arrested for operating a motor vehicle while under the influence of alcohol, drugs, or both in violation of General Statutes 14-227a. The plaintiff was also apprised of his constitutional rights. ROR Item 5, TPIR, p. 6.
While being processed at the Torrington Police station, Mr. Neary informed the officers that he was having chest and back pains and that he wished to go to the hospital. Mr. Neary was taken to the hospital at approximately 9:14 p. m. ROR Item 5, TPIR, p. 6. Mr. Neary was released from the hospital and returned to police headquarters at approximately 11:00 p. m. ROR Item 5, TPIR, p. 6. Mr. Neary then consented to an Intoximeter 3000 Breath Test, which resulted in the following readings:
Time BLOOD ALCOHOL COUNT ("BAC")
 11:22 p. m. .154 11:54 p. m. .147
ROR Item 5, TPIR, p. 7.
In accordance with General Statutes 14-227b(c), a written report of the arrest and test results was forwarded to the Department of Motor Vehicles. The plaintiff was subsequently notified by the Commissioner that his operator's license was to be suspended for ninety (90) days because his BAC exceeded the level set forth in Connecticut's implied consent law. CT Page 3755 ROR Item 2, Certified Copy of Suspension Notice. The plaintiff was also notified that he was entitled to a hearing at which to contest this suspension. RDR Item 2.
The plaintiff requested and, on September 4, 1991, was given an administrative hearing in accordance with General Statutes 14-227b(d), (f) and (g). Said hearing was limited to the following four issues:
 (1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor. . . (2) was such person placed under arrest; (3) . . . did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle.
General Statutes 14-227b(f); Field v. Goldberg, 5 CTLR 369, 370 (December 23, 1991, Maloney, J.)
If after the administrative hearing, the hearing officer "finds on any one of these issues in the negative, the Commissioner must reinstate the license." Field, supra. In the present case the hearing officer found all of the issues in the affirmative and, as a result thereof, the Commissioner ordered a ninety (90) day suspension of the plaintiff's operator's license. ROR Item 6, Decision of Attorney Jeffrey Donahue, Hearing Officer.
AGGRIEVEMENT
One whose license is suspended pursuant to General Statutes 14-227b
"is an aggrieved person within the meaning of General Statutes 4-183(a) in that a specific, personal and legal interest, his license to drive, has been adversely affected." Tarascio v. Muzio, 40 Conn. Sup, 505, 507,515 A.2d 1082 (1986); Bakelaar v. West Haven, 193 Conn. 59, 65,475 A.2d 283 (1984). Consequently, this court finds that the plaintiff is aggrieved within the meaning of General Statutes 4-183(a).
"`Judicial review of the Commissioner's action is governed by the Uniform Administrative Procedure Act [General Statutes 4-166 through4-189], and the scope of that review is very restricted.'" Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489 (1986) (citations omitted). The court is not to substitute its judgment for that of the defendant, nor is it to retry the case, Id. See also General Statutes 4-183(j).[1] Indeed, the court is only "to decide whether, in light of the evidence [in the administrative record], the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of [his] discretion." Buckley, supra, 3; Connecticut Light Power Co. v. Department of Public Utility Control,216 Conn. 627, 639, 583 A.2d 906 (1990). The credibility of witnesses CT Page 3756 and the determination of factual issues are within the province of the agency, Lawrence v. Kozlowski, 171 Conn. 705, 708, 372 A.2d 110 (1976), and the plaintiff has the burden of proving that the commissioner acted contrary to law and in abuse of his discretion. Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 16-17 (1973), Thus, if the determination of the four license suspension issues set forth in General Statutes14-227b(f), supra, is reasonably supported by the evidence in the record, the decision of the Commissioner must be sustained. Clark v. Muzio,40 Conn. Sup. 512, 514, 516 A.2d 160 (1986, Hammer, J.), aff'd,14 Conn. App. 212, 540 A.2d 1063 (1988), cert. denied, 208 Conn. 809,545 A.2d 1105 (1988), citing Madow v. Muzio, 176 Conn. 374, 376,407 A.2d 997 (1978).
In its brief and oral argument to the court on this appeal, the plaintiff contends, inter alia, that the blood alcohol level tests do not accurately reflect the plaintiff's blood alcohol level at the time of the alleged operation of the motor vehicle. The plaintiff contends that the hearing officer could not properly find that the plaintiff's BAC at the time of the alleged operation of the motor vehicle exceeded .10 because such finding was made despite the uncontroverted testimony of Dr. Abraham Stolman, former Chief Toxicologist of the State of Connecticut. The defendant, in its memorandum and oral argument, rebuts this contention.
At the hearing, the following examination of Dr. Stolman transpired:
 Q. (By Mr. Donahue): Is there a time when a blood alcohol content test result from the intoximeter three-thousand becomes unreliable because of the passage of time between observed operation and the time of the testing?
A. (By Dr. Stolman): Yes, very definitely.
Q. (By Mr. Mencuccini): What is the general —
 A. If you have as in this case, you have two blood alcohol determinations. It gives you the idea that the body is burning off alcohol, so you could use those factors to extrapolate back previous, and an hour and a half beyond that point it's pure guesswork, speculation what the alcohol was beyond an hour and a half,
ROR Item 4, Transcript of Hearing, p. 8.
Dr. Stolman further testified that, given the facts of this case, because the blood alcohol tests were administered at 11:22 p. m. and at 11:53 p. m., one could not say with a reasonable degree of scientific probability what Mr. Neary's BAC was at 8:14 p. m. ROR Item 4, Transcript of Hearing, pp. 8-9. Dr. Stolman's testimony and opinions were uncontroverted.
In Marshall v. DelPonte, 27 Conn. App. 346, ___ A.2d ___, (released CT Page 3757 April 14, 1992), the court dealt with a similar issue. In Marshall, the plaintiff/appellee's automobile was stopped after a police officer witnessed the automobile travel through a red light. Upon reaching Mr. Marshall, the "officer smelled alcohol on his breath and observed that his eyes looked glassey and his speech was slurred." Id., 347. Upon failing the field sobriety tests, Mr. Marshall was placed under arrest. A breathalyzer test administered at 1:27 a.m., thirty-six (36) minutes after the alleged incident, revealed a blood-alcohol content of .178. A second test, administered at 2:05 a.m., one hour, fourth (1.14) minutes after the alleged incident, revealed a BAC of .177. Id., 347-48.
At the administrative hearing before hearing officer Brian Carey, the sole evidence presented was an "Officer's DWI Arrest and Alcohol Test Refusal or Failure Reports" which, essentially, outlined the facts articulated, supra. The state produced evidence regarding Mr, Marshall's BAC "at the time the intoximeter tests were administered, but no extrapolation of that data back to the time of the offense appear[ed] on the record." Id., 349. However, Carey issued his findings of fact and conclusions of law in favor of the state, and Mr. Marshall, consequently, appealed to the Superior Court. Id. That court sustained the appeal because, inter alia:
 [T]he defendant's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record because there was no evidence, expert or otherwise, indicating the plaintiff's BAC at the time of the offense.
Id., 351, discussing Marshall v. DelPonte, 4 CTLR 36 (May 14, 1991, Clark, J.)
The defendant Commissioner appealed to the Appellate Court, which found that:
 [T]he record of the suspension proceeding discloses no evidence supporting Carey's finding that the Plaintiff's BAC was equal to or greater than 0.1 percent at the time of the offense. Although the record contains the results of two intoximeter tests administered after the alleged offense, it contains no extrapolation of those results back to the time of the offense.
Marshall, 27 Conn. App. at 346.
The present matter presents a situation more compelling than that in Marshall, supra. Indeed, in this instance, the plaintiff's first breathalyzer test was administered more than three hours after the alleged incident. Additionally, the record of the suspension proceedings in the instant case reveals no evidence supporting Mr. Donahue's finding that Mr. Neary's BAC was equal to or greater than .10 percent at the time of CT Page 3758 the offense. Marshall, 27 Conn. App. at 346. As was the case in Marshall, supra, the record contains the results of two intoximeter tests administered after the alleged offense, but there is no extrapolation of those results back to the time of the offense. Indeed, in the present case, the record contains uncontroverted testimony from Dr. Stolman, who, as was noted, supra, stated that it could not be said with a reasonable degree of scientific probability what Mr. Neary's BAC was at the time of the alleged offense, ROR Item 4, Transcript of Hearing, pp. 8-9. Furthermore:
 [T]he record [in the present case] does not indicate that [Donahue] either relied on his own expertise in determining the plaintiff's BAC at the time of the alleged offense or attempted to take judicial notice of the plaintiff's BAC at the time of the alleged offense. See General Statutes 4-178(6).[2]
Even if he had, General Statutes 4-178(7) prohibited him from relying on either his own expertise or on judicial notice unless he first notified the parties in a timely manner in order to afford them an opportunity to contest that material. . . Thus, even assuming . . . that extrapolation back of BAC data falls within the rubric of General Statutes 4-178(6), such extrapolation back cannot support the defendant's decision in this case because [Donahue] failed to advise the parties of his intent to rely on either his special expertise or judicial notice.
Marshall, 27 Conn. App. at 352-53.
The record in the present case;
 [D]iscloses no evidence on which [Donahue] reasonably could have found that the plaintiff's BAC at the time of the alleged offense was equal to or greater that (sic) 0.1 percent. Further, [Donahue] failed to apprise the parties of his intent to rely on either his own expertise or judicial notice to establish the plaintiff's BAC at the time of the alleged offense. As a result, the evidence presented at the suspension hearing was insufficient to justify suspending the plaintiff's driver's license under General Statutes 14-227b. (Emphasis added.
Id., 352-53.
Consequently, this court finds that the defendant's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and that the decision was arbitrary and constituted an abuse of the defendant's discretion. Id., 353, citing General Statutes 4.183(j)(5) and (6).
Because the determination of this issue is dispositive with regard to this appeal, this court need not consider the plaintiff's additional arguments. The appeal is therefore substained. CT Page 3759
PICKETT, JUDGE