[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Gregory M. Field appeals the decision of the defendant Commissioner of Motor Vehicles suspending the plaintiff's motor vehicle operator's license pursuant to General statutes 14-227b. The plaintiff appeals pursuant to 4-183. The court rules in favor of the plaintiff.
On May 8, 1992, the, plaintiff was arrested for operating a motor vehicle under the influence of intoxicating liquor. The arresting officer, acting on behalf of the Commissioner, revoked and took possession of the plaintiff's driver's license and issued him a temporary license. The officer took this action on the basis of a chemical test of the plaintiff's breath, which was CT Page 11418 administered to measure his blood alcohol content (BAC). The plaintiff duly requested a hearing pursuant to General statutes 14-227b.
On May 27, 1992, the Commissioner sent the plaintiff a notice informing him that a hearing on his license suspension would be held on June 4, 1992, at the office of the Commissioner. The notice also contained a summary of the purpose and scope of the hearing, and with respect to the evidence to be presented, it stated:
 At the hearing the report submitted to the Department under subsection (c) of Section 14-227b (FORM A-44) shall be offered in evidence. Moreover, the Hearing Officer will rely on his own expertise in determining whether the test results indicate a blood alcohol content (BAC) of 0.1 or greater at the time of the offense.
The plaintiff claims that he never received that notice. Instead, he claims he learned of the hearing by telephoning the Commissioner's office.
General statutes 14-227b(f) provides, in relevant part, as follows:
 The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person . . . for operating a motor vehicle while under the influence of intoxicating liquor . . . (2) was such person placed under arrest; (3) . . . did such person submit to such test or analysis is and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle.
The plaintiff appeared and represented himself at the hearing. He testified and offered numerous items, documents and photographs in evidence, all of which were CT Page 11419 admitted. The hearing officer, in behalf of the Commissioner, introduced the A-44 report of the police officer who arrested the plaintiff and conducted the chemical test of his blood alcohol level. The Commissioner did not introduce any other evidence.
The police report states that the police observed the plaintiff operating his vehicle at sixty m.p.h. in a thirty-five m.p.h. zone. "When pulling over, the vehicle bounced off the curb and then stopped in the middle of the intersection." The police detected an odor of liquor on the plaintiff's breath, and in the opinion of the officer, he failed the field sobriety test.
The A-44 form states further that the police stopped the plaintiff's vehicle at 12:45 A.M. They administered the first breath test at 1:35 A.M., which showed his BAC to be .142 at that time. The second test at 2:08 A.M. showed his BAC to be .127 at that time.
The plaintiff's testimony and other evidence indicated that he was suffering from rheumatoid arthritis for which he was taking the drug Motrin. He testified that the condition caused him to perform poorly on the field sobriety test. He also testified that he used a breath deodorant spray after his arrest and prior to the first breath test. He stated to the hearing officer that "too much time had elapsed between the alleged offense and the actual tests in that it does not — it was not high enough nor was it close enough chronologically to the time of arrest to back (sic) to the time of driving."
On June 5, 1992, the hearing officer rendered he decision, including "subordinate findings of fact." With respect to probable cause for the plaintiff's arrest, she found that the "totality of the circumstances including the officer's observations and the field test results provide sufficient probable cause" for the arrest. With respect to the finding that the plaintiff's BAC exceeded .10 at the time he was operating the vehicle, the hearing officer found as follows:
 The time of respondent's operation was .0045 (sic). The result of the first intoximeter 3000 test was .142 at 0135 hours, CT Page 11420 50 minutes after operation, This descended to a .127 at 0208 hours, 33 minutes after the first test. Elimination from the first to the second test was occurring at a rate of .027 per hour. Therefore, 50 minutes prior to the first test, the respondent's BAC was greater than .10 and it is probable that it was as high as .164.
 Any mouth alcohol produced by respondent's use of breath spray had ample time to dissipate prior to the administration of the first breath test, and could not have contributed in any significant way to the intoximeter reading of .147 (sic). The intoximeter 3000 measures the alcohol from a breath sample which emanates from alveolar air deep in the lungs.
Based on the hearing officer's findings on the issues set out in 14-227b(f), the Commissioner affirmed the suspension of the plaintiff's license. He is, therefore, aggrieved within the meaning of 4-183.
In his brief and at oral argument on this appeal, the plaintiff has advanced two grounds for his appeal. They may be summarized as follows:
 1. The evidence was not sufficient to support the hearing officer's finding that there was probable cause for the plaintiff's arrest on the drunk driving charge.
 2. The evidence was not sufficient to support the hearing officer's finding that the plaintiff's BAC exceeded the legal limit at the time he was operating his vehicle.
I. Probable Cause
The plaintiff's arguments on the issue of probable cause are based essentially on the evidence he submitted at the administrative hearing in an effort either to explain or rebut the statements of the police officer in the A-44 report. It is well settled law, however, that the weight to be given to conflicting evidence and the determination CT Page 11421 of factual issues is within the province of the hearing officer in an administrative proceeding. The court may not overrule the hearing officer's factual findings and conclusions if there is substantial evidence which reasonably supports them. Lawrence v. Kozlowski, 171 Conn. 705,707-708 (1976).
The court has carefully examined the whole record in this case, including the police report, the plaintiff's evidence, and the transcript of the hearing. "In order to establish probable cause it is not necessary to produce a quantum of proof sufficient to establish guilt. . .probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that (a crime) has been committed." state v. Torres, 182 Conn. 176,189 (1980). The police report, as described above, provided substantial evidence to support the finding of the hearing officer that there was probable cause to arrest the plaintiff for driving under the influence. That being so, the court must not disturb that finding, notwithstanding the opposing evidence introduced by the plaintiff. The plaintiff's contentions regarding the issue of probable cause, therefore, may not be sustained.
II. BAC AT TIME OF OFFENSE
The plaintiff argues that the chemical analysis of his breath was inconclusive' as to his BAC at the time of the alleged offense. He claims that there is insufficient evidence in the record to support the hearing officer's finding on this issue. The plaintiff also claims that as of the date of the hearing, he had not received any written notice of the hearing date, and therefore was not informed of the hearing officer's intention to rely on her own expertise in determining whether the intoximeter test results indicated a BAC of .10 or more at the time of the alleged offense.
This court's decision on the plaintiff's arguments concerning extrapolation of the BAC test results back to the time when the plaintiff was operating his vehicle is controlled by our Appellate Court's decision in Marshall v. DelPonte, 27 Conn. App. 346 (1992). That case, like the CT Page 11422 instant case, was an appeal of the Commissioner's decision following an administrative license suspension hearing. In Marshall, the court refused to extend the rule of state v. Geisler, 22 Conn. App. 142 (1990); which was a criminal case and which required expert testimony to support the necessary extrapolation. The Marshall court did hold, however, that there must be some evidence, expert or otherwise, to support the hearing officer's findings concerning the BAC at the time of the offense. Thus, in sustaining the plaintiff's appeal, the court observed:
 The record of suspension proceeding discloses no evidence supporting (the hearing officer's) finding that the plaintiff's BAC was equal to or greater than 0.1 percent at the time of the offense. Although the record contains the results of two intoximeter tests administered after the alleged offense, it contains no extrapolation of those results back to the time of the offense.
Id., 352.
Although the Marshall decision was based on the lack of sufficient evidence to support the hearing officer's finding concerning the BAC at the time of the offense, the court did indicate what kinds of evidence other than expert testimony might be sufficient to support such a finding. Thus, the court points out:
 . . . the record does not indicate that (the hearing officer) either relied on his own expertise in determining the plaintiff's BAC at the time of the alleged offense or attempted to take judicial notice of the plaintiff's BAC at the time of the alleged offense. See General statutes 4-178 (6). Even if he had, General statutes 4-178 (7) prohibited him from relying on either his own expertise or on judicial notice unless he first notified the parties in a timely manner in order to afford them an opportunity to contest that CT Page 11423 material. See Feinson v. Conservation Commission, 180 Conn. 421, 428-429
(1980).
Marshall, supra, 352.
General statutes 4-178 (6), (7), and (8) read as follows:
 In contested cases . . . (6) notice may be taken of judicially cognizable facts and of generally recognized technical or scientific facts within the agency's specialized knowledge; (7) parties shall be notified in a timely manner of any material noticed, including any agency memoranda or data, and they shall be afforded an opportunity to contest the material so noticed; and (8) the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence.
The Marshall court's citation of Feinson at180 Conn. 428-429, in connection with its citation of 4-178
(6) and (7), indicates the proper application of those statutory provisions to license suspension hearings conducted by the Commissioner or his hearing officer. In Feinson, at 428-429, the Supreme Court held:
 If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings.
Taken together, the Marshall and Feinson decisions and 4-178 (6) and (7) require that the Commissioner give timely notice of any facts which are material to the hearing officer's decision on the extrapolation of the BAC test results when such facts will be either judicially noticed or when they are within the hearing officer's own CT Page 11424 knowledge or "expertise." These cases and the, statute do not require, however, that such specific advance notice be given when the hearing officer will use his or her expertise merely to evaluate evidence which is introduced in the record at the hearing. General statutes 4-178 (8). See also the discussion of this distinction in Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, espec. 532 (1989). In that case, the court found the distinction to be somewhat blurred because of the obvious and demonstrable professional qualifications of the board members in the subject matter under review. The court held that the board, composed mostly of licensed chiropractors in accordance with the applicable statute, was entitled to determine the proper standard. of chiropractic care by resorting to its own professional expertise. The court indicated that the board members were entitled to reach conclusions on that subject which were not supported by specific evidence in the record. It also noted, on the other hand, that the board could use its special expertise in the evaluation of evidence that was in the record. Id. 526. In the present case, unlike Levinson, the hearing officer is an attorney who does not possess obvious, formal, professional qualifications in the field of hematology. The distinction here, therefore, between the hearing officer's use of scientific facts which are not in the record and the use of her special expertise in evaluating facts which are in the record is more significant.
Applying the principles of law discussed above to the facts and circumstances of this case requires the court to analyze the notice which the Commissioner sent to the plaintiff, the evidence in the record, and the findings and conclusions of the hearing officer as revealed in her decision.
As already indicated, the relevant text of the notice sent in advance to the plaintiff was brief. It simply stated that "the Hearing Officer will rely on his own expertise in determining whether the test results indicate a blood alcohol content (BAC) of 0.1 or greater at the time of the offense." More important than what it said, however, is what it did not say. The notice did not tell the plaintiff that the Hearing Officer would: CT Page 11425
 a) take notice of any "judicially cognizable facts"; see 4-178 (6); or
 b) take notice of any "generally recognized technical or scientific facts within the agency's specialized knowledge"; see 4-178 (6); or
 c) use other "material facts that are critical to its decision" and that are within "its special knowledge and experience"; see Feinson, supra 428-429.
Since the Commissioner's notice did not tell the plaintiff in advance that any specific facts within the hearing officer's or the agency's expertise would be used in reaching her decision, the notice did not follow the provisions of 4-178 (7) or the rule in Marshall, supra 352 and Feinson, supra 428-429. Therefore, at most, the notice referred to the Commissioner's intention that the hearing officer would use "the agency's experience, technical competence, and specialized knowledge . . . in the evaluation of the evidence", as provided in subsection (8) of 4-178. The court's conclusion in this regard has two consequences for the resolution of the plaintiff's appeal in this case. First, the law does not require that an agency notify a party in a contested case in advance that the agency will use its special "expertise" in the evaluation of evidence that will be introduced in the record at the hearing. The agency is only required to give timely notification of facts not in the record but which are within its knowledge and which will be used in reaching its decision. This being so, it is immaterial that the plaintiff did not receive the Commissioner's notice in this case, because that notice, which contained no specific facts that would be used by the hearing officer, was not required by the law. The second consequence is that the failure of the Commissioner to notify the plaintiff in advance of any material facts within the agency's or hearing officer's special knowledge or expertise prohibited the hearing officer from using any such facts, which are not in the record, in formulating her decision.
The facts which do appear in the record in this case CT Page 11426 are similar to those in Marshall, supra. The plaintiff was observed operating a vehicle. An hour or so later, he submitted to two chemical tests of his breath. The tests gave different results, showing his BAC to be in excess of the legal limit and descending. One factor which was addressed by the hearing officer and which was not present in Marshall was the possibility that the plaintiff had sprayed an alcoholic deodorant in his mouth prior to the breath test. The other major difference, vigorously emphasized by the Commissioner, is the notice concerning the use of the hearing officer's "expertise" in determining the BAC at the time of the offense. As indicated above, however, there is nothing else in the Commissioner's notice or in the evidence adduced at the hearing which constitute facts material to the determination of the plaintiff's BAC prior to his tests.
As the Marshall court held, supra 352, the results of two breath tests taken after the offense do not, standing alone, constitute sufficient evidence to support a determination of BAC at the time of the offense. What is needed in addition, according to Marshall, is "extrapolation of those results back to the time of the offense." Id. In the present case, the hearing officer attempted to supply the extrapolation. In doing so, as revealed in her decision, she used a number of factual assumptions:
 1. The hearing officer used as a fact the assumption that the hourly rate of change in the plaintiff's BAC could be determined by simple mathematical calculation, using the two test results and the 33 minute time interval.
 2. The hearing officer used as a fact the assumption that the hourly rate of change, as mathematically determined, would be constant, whether the alcohol was being absorbed or eliminated.
 3. The hearing officer used as a fact the assumption that the hourly rate of change, as mathematically determined, would have applied to the 50 minute period from the CT Page 11427 time of the offense to the time of the first test, whether the alcohol was being absorbed or eliminated during that period.
In addition to the above factual assumptions which the hearing officer used to arrive at her finding concerning the plaintiff's BAC at the time he was operating his vehicle, she made a further assumption of fact concerning the operation of the Intoximeter 3000, which the record reveals was the machine used to measure the plaintiff's BAC. In this regard, the hearing officer used as a fact the assumption that "(t)he intoximeter 3000 measures the alcohol from a breath sample which emanates from alveolar air deep in the lungs." She concluded on the basis of this assumed fact that the mouth/breath spray did not affect the test results.
None of the above facts, which the hearing officer necessarily assumed in reaching her decision, is supported by any evidence appearing in the record. Nor were any of those factual assumptions included in the Commissioner's notice to the plaintiff. In his supplemental brief to the court on this appeal, the plaintiff attempts to rebut many of the hearing officer's assumptions by introducing excerpts from scientific treatises on the subject of alcohol absorption and elimination in the blood. The Commissioner quite properly objects on the ground that the plaintiff did not introduce these treatises in evidence at the administrative hearing and, therefore, the court must disregard them. This conflict, however, precisely illustrates the underlying reason for the notice requirements of 4-178 (6) and (7). It is to give adverse parties "an opportunity to contest that material" at the hearing — that is, an opportunity at the hearing to contest any facts which the hearing officer will later use in reaching a decision. Marshall, supra 352, citing Feinson, supra 428-429. Since the law "prohibits" the use of factual assumptions that are not so noticed, Marshall, supra 352, the plaintiff in this case had no reason to think he had any such material to rebut when he appeared at the hearing.
The defendant Commissioner raises the argument that the plaintiff should be held to have waived his right to object to the hearing officer's use of facts not in the record. In this connection, he notes that the plaintiff CT Page 11428 did not question the hearing officer's "expertise" at the hearing. This argument, however, misses the essential point of the Marshall and Feinson decisions, and it fails to meet the thrust of 4-178 (6) and (7). Those authorities impose a positive obligation on the agency to provide advance notice of material which will not be in record and which the agency will use in reaching its decision, and they prohibit the use of such materials not noticed. If the agency fails to provide such notice, the agency waives the right to use the material; there is nothing for the plaintiff to waive.
In summary, the court holds that the hearing officer was not entitled to take judicial notice of any facts not supported by evidence in the record, nor was she entitled to use facts within her special expertise which were not supported by evidence in the record, in arriving at her findings and conclusions. Specifically, she was not entitled to use those factual assumptions concerning the rate of change in the plaintiff's BAC and the operation of the Intoximeter 3,000. She was not entitled to use that material because the Commissioner did not give the plaintiff timely notice of her intention to do so in accordance with 4-178 (7). Without that factual material, however, the evidence was essentially no greater than that which the court found to be insufficient in Marshall v. DelPonte, supra. As a result, the Commissioner's decision in this case, like that in Marshall, was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and was arbitrary, capricious and constituted an abuse of the defendant Commissioner's decision. See General statutes 4-183(j)(5) and (6). Marshall v. DelPonte, supra 353.
The plaintiff's appeal is sustained.
Maloney, J. CT Page 11429