[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas Savapolos has appealed seeking judicial review of a decision of the Commissioner of the Motor Vehicles ordering the suspension of his motor vehicle operator's license for a period of ninety days in accordance with the administrative "per se" license suspension provisions of Connecticut's implied consent law, Conn. Gen. Stat.14-227b, as amended by Public Act No. 89-314, Sec. 1.
On May 22, 1992 at approximately 11:00 p.m. a motor vehicle operated CT Page 8-A by the plaintiff was stopped at a sobriety checkpoint conducted by the Connecticut State Police at the intersection of Route 800 and Route 118 in Litchfield, Connecticut. The checkpoint began at approximately 8:00 p.m. and ended at 2:30 a.m. All vehicles passing through this checkpoint were stopped and any operators who were suspected of being intoxicated were instructed to pull over to another area for further investigation. The arresting officer, Trooper John Sipper, testified at the hearing that the plaintiff had not been operating his motor vehicle in an inappropriate manner prior to being stopped. Further, when instructed, the plaintiff stopped and parked his vehicle in an appropriate manner at the checkpoint. After the police officer detected the odor of alcoholic beverages on his breath, the plaintiff submitted to a series of field sobriety tests, and was subsequently arrested on the charge of driving while under the influence.
On June 17, 1992 a hearing was held before Attorney Mark Gutis, Department of Motor Vehicles, to determine if the plaintiff"s license should be suspended for a period of ninety days in accordance with Public Act 89-314. At the hearing, the plaintiff through his counsel, attempted to inquire of the hearing officer as to his qualifications in extrapolating back the results of blood alcohol CT Page 8-B tests to the time of the alleged offense as required by Conn. Gen. Stat. 14-227b. The hearing officer, however, refused to be so examined.
On June 18, 1992, Attorney Gutis rendered a decision in which he made findings of fact and conclusions of law, as provided byPublic Act 89-314, against the plaintiff and suspended the plaintiff's license for a period of ninety days. On June 23, 1992, plaintiff filed his petition to appeal from the Department of Motor Vehicles.
As part of Connecticut's program to deter drunken driving, the General Assembly has enacted an implied consent law. See, Conn. Gen. Stat. 14-227b, as amended by Public Act NO. 89-314. This statute declares that any person who operates a motor vehicle in Connecticut shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine if arrested for driving while under the influence of intoxicating liquor or any drug, or for other enumerated offenses. Id. If the person arrested submits to the required test and the results of said test indicate that the ratio of alcohol in his blood was more than ten-hundredths of one percent of alcohol by weight at the time of the offense, that person's operator's license shall be suspended for CT Page 8-C ninety days. Id. Prior to the effective date of the suspension, however, a person is entitled to an administrative hearing which is limited to the following four issues:
 (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one percent or more of alcohol, by weight; and (4) was such person operating the motor vehicle.
Conn. Gen. Stat. 14-227b(f). CT Page 8-D
In the instant case the plaintiff was arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs or both.[1] After being apprised of the chemical alcohol testing requirements of the implied consent law, the plaintiff agreed to take the mandatory test. The results of the test indicated that the ratio of alcohol in plaintiff's blood was more than ten-hundredths of one percent of alcohol by weight. A written report of the arrest and test results was forwarded to the Department of Motor Vehicles in accordance with 14-227b(c), as amended by Public Act No. 89-314. Thereafter, the plaintiff was notified by the Commissioner of Motor Vehicles that his operator's license was to be suspended for ninety days because the plaintiff's blood alcohol content (BAC) had exceeded the level set forth in the implied consent law. Plaintiff was also notified that he would be provided with a hearing to contest the suspension decision if he wished to do so.
The plaintiff requested and was given an administrative hearing and, based upon the evidence introduced at the hearing, the Commissioner, acting through his designee found in the affirmative on the four license suspension issues. As a result of this determination, the Commissioner CT Page 8-E ordered the suspension of the plaintiff's operator's license for a period of ninety days.
Pursuant to Section 4-183 of the Connecticut General Statutes, the plaintiff filed the instant appeal in the superior court seeking judicial review of the Commissioner of Motor Vehicles' suspension decision. In his complaint and brief, the plaintiff argues that the decision should be reversed for the following reasons: (1) the police lacked probable cause to arrest the plaintiff since the initial stop was unconstitutional under the Connecticut Constitution; and (2) the hearing officer improperly refused to allow plaintiff's counsel to cross examine him as to his qualifications and experience with regard to extrapolation of breath alcohol tests.
In an appeal such as this "[i]t is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion." Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 16-17, 327 A.2d 569 (1973). See also, Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles,165 Conn. 559, 570, 345 A.2d 529 (1973); Firestone Tire Rubber Co. v. Commissioner of Motor Vehicles, 165 Conn. 10, 11, 327 A.2d 573 (1973). CT Page 8-F
Judicial review of the Commissioner of Motor Vehicles' actions in suspending an operator's license under C.G.S. 14-227b is governed by the Uniform Administrative Procedure Act (UAPA), Conn. Gen. Stat. 4-166 et seq., and the scope of that review is very restricted. Buckley v. Muzio,200 Conn. 1, 3, 509 A.2d 489 (1986). Thus, it is not the function of the superior court to retry the case or to substitute its judgment for that of the commissioner, Buckley v. Muzio, supra; C H Enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 11, 12,404 A.2d 864 (1978). Rather, "[t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, . . . [the court] cannot disturb the conclusion reached by him." DiBenedetto v. Commissioner of Motor Vehicles, 168 Conn. 587, 589, 362 A.2d 840 (1975). See also, Madow v. Muzio, 176 Conn. 374, 376, 407 A.2d 997 (1978); Griffin v. Muzio, 10 Conn. App. 90, 91-92, 521 A.2d 607, cert. denied, 203 Conn. 805,525 A.2d 520 (1987).
To prevail in this appeal the plaintiff bears the heavy burden of proving inter alia, that substantial rights possessed by him have been CT Page 8-G prejudiced because the decision to suspend his operator's license is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." Conn. Gen. Stat. 4-183(j)(5). See Lawrence v. Kozlowski, 171 Conn. 705, 713-14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 967, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). "Judicial review of an administrative decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639, 583 A.2d 906 (1990). See also, Connecticut Light Power Co. v. DPUC, 219 Conn. 51, 57-58,591 A.2d 23 (1991). "Substantial evidence" exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Id., 639-40; Lawrence v. Kozlowski, supra. What this means in the context of a license suspension decision under the implied consent law is that "[I]f the administrative determination of [the four license suspension issues set forth in Sec. 14-0227b(f)] is reasonably supported by the evidence in the record, it must be sustained." Clark v. Muzio, 40 Conn. Sup. 512, 514, 516 A.2d 160 (1986), affirmed, 14 Conn. App. 212, 540 A.2d 1063, cert denied, 208 Conn. 809,545 A.2d 1105 (1988). In this regard, the record contains substantial CT Page 8-H evidence supporting the suspension decision. This evidence, which includes the written report prepared by the police in accordance with14-227b(c) and the testimony given at the administrative hearing held on June 17, 1992, discloses the following:
On May 22, 1992, Connecticut State Police were conducting a roadside sobriety check at Routes 800 and 118 in Litchfield at which all vehicles were stopped; it was not a random or selective stop. The plaintiff was stopped at the check. When Trooper John Sipper approached the plaintiff's car to request his license, registration and insurance card, the trooper noticed that the plaintiff's speech was slurred and that he had an odor of alcoholic beverage on him.
At the trooper's request, the plaintiff performed five field sobriety tests, which he failed. He was placed under arrest and transported to Troop L. The plaintiff was advised of his rights and was given an opportunity to contact an attorney. He then agreed to submit to a breath test. The first test was given at 11:50 p.m. May 22 and showed a blood alcohol content of .247. The second test was given at 12:37 a.m. May 23, and showed a blood alcohol content of .230.
I CT Page 8-I
The stop of a motor vehicle and detention of its occupant constitutes a seizure within the meaning of the fourth andfourteenth amendments to the United States Constitution. State v. Anderson,24 Conn. App. 438, 441 (1991). This includes highway sobriety check points. Such investigatory seizures and detentions are permitted under both the United States Constitution and the Connecticut Constitution. The plaintiff's contention that such check points are impermissible under the Connecticut Constitution is without merit.
Regarding the right of persons as to search and seizures, the United States Constitution states:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 Fourth Amendment. Likewise, the Connecticut Constitution states: CT Page 8-J
 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.
Art. 1, 8.
In the area of fundamental civil liberties, which includes all protections contained in Article 1 of the Connecticut Constitution, the Connecticut Supreme Court states that its "interpretations" may not restrict the guarantees accorded the national citizenry under the "federal" constitution. Horton v. Meskill, 172 Conn. 615, 641,376 A.2d 359 (1977). Accordingly, decisions of the United States Supreme Court defining fundamental rights are persuasive authority to be afforded respectful consideration, which can be followed by Connecticut courts, so long as they "provide no less individual protection than is guaranteed by Connecticut law." Id., page 642.
However, on the subject of the constitutionality of highway sobriety CT Page 8-K checkpoints, the United States Supreme Court holds that such checkpoints are ot [not] in violation of theFourth Amendment of the United States Constitution. Michigan Department of State Police v. Sitz, 496 U.S. 444,110 S.Ct. 2481, 2488 (1990).
Connecticut courts have not addressed the constitutionality of sobriety checkpoints under the Connecticut Constitution. Our supreme court has "determined in some instances, that the protections afforded to the citizens of this state by our constitution go beyond those provided by the federal constitution as that document has been interpreted by the United States Supreme Court." State v. Lamme, 216 Conn. 172, 183
(1990); State v. Marsala, 216 Conn. 150, 159-160 (1990); State v. Dukes,209 Conn. 98, 115 (1988); State v. Stoddard, 206 Conn. 157, 166 (1988); State v. Geisler, 222 Conn. 672, 684 (1992). In Lamme, our Supreme Court stated:
 Our appraisal of the due process contours of Article I, Sec. 9, leads us to conclude that the principals of fundamental fairness that are the hallmark of due process permit a brief investigatory detention, even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has CT Page 8-L committed or is about to commit a crime. We hold, therefore, that the principals underlining constitutionally permissible Terry stops, as further construed in cases such as the United States v. Hensley, supra, 227 and Florida v. Royer, supra, 498, define when detentions are "fairly warranted by law" under Article I, Sec. 9. Balancing the circumscribed nature of a Terry stop intrusion against the serious risk of criminal behavior, especially in the context of the risk associated with driving while under the influence of intoxicating liquor, we are persuaded that the defendants brief detention did not violate his due process rights. Id. at 184.
Article I, Sec. 9 of the Connecticut Constitution provides "no person shall be arrested, detained or punished, except in cases clearly warranted by law."
Lamme holds that the brief investigatory detention of a person is permissible under our Constitution even in the absence of probable cause when the police have a reasonable and articulable suspicion that the person has committed or is about to commit a crime. The decision in Lamme concerned the brief detention of an operator of a motor vehicle CT Page 8-M suspected of operating while under the influence of intoxicating liquor. Clearly the evidence before the officer established that if the plaintiff were to continue to drive, he would be committing a crime. Lamme, at 176.
As to whether highway sobriety checkpoints are in violation of the Connecticut Constitution, we appropriately apply the three prong test derived from the opinion in Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637
(1979). See also, Michigan Department of State Police v. Sitz, supra. The Brown test involves weighing three factors,
The first Brown factor involves the gravity of the public concerns served by the seizure.
In a series of cases spanning several decades, the United States Supreme Court has repeatedly lamented the slaughter on our nation's highways and the dangers posed to almost everyone by those individuals who operate motor vehicles while under the influence of intoxicating liquor or drugs. Recently, in upholding the constitutionality of Michigan's use of highway sobriety checkpoints as a means of combating drunken driving, the court observed that: CT Page 8-N
 No one can seriously dispute the magnitude of the drunken driving problem or the states interest in eradicating it. Media reports of alcohol-related death and mutilation on the nation's roads are legion. The anecdotal is confirmed by the statistical. `Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage.'
Michigan Department of State Police v. Sitz, supra. See also South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983) ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here"); Breithaupt v. Abram, 352 U.S. 432,77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957) ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield"); Tate v. Short, 401 U.S. 395,91 S.Ct. 668, 672, 28 L.Ed.2d 130 (1971) (Blackmun, J., concurring) (deploring "traffic irresponsibility and the frightful carnage it spews upon our highways"); Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704,1715 and 1722, 29 L.Ed.2d 233 (1971) (Blackmun, J., concurring) ("The CT Page 8-O slaughter on the highways of this nation exceeds the death toll of all our wars"); Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 2620-2621,61 L.Ed.2d 321 (1979) (recognizing the "compelling interest in highway safety" in upholding the constitutionality of Massachusett's implied consent law's summary license suspension procedures). Similarly our supreme court has noted that "[t]he offense of driving under the influence of intoxicating liquor is particularly dangerous . . . and the legislatures and the courts have emphasized the need to protect the public from drunk drivers whether on streets or highways or other public or private property." State v. Boucher, 207 Conn. 612, 618, 541 A.2d 865 (1988). In 1991 alone, over 14,000 Connecticut drivers had their licenses suspended for violating this statute. Collins v. Goldberg, 28 Conn. 733,733 n. 2, 611 A.2d 938 (1992).
The second Brown factor weighs the degree to which the seizure advances the public interests. The United States Supreme Court specifically stated that the effectiveness of highway sobriety checkpoints was adequate.
 The actual language from Brown v. Texas, upon which the Michigan courts based their evaluation of "effectiveness," describes the CT Page 8-P balancing factor as "the degree to which the seizure advances the public interest." 443 U.S., at 51, 99 S.Ct. at 2640. This passage from Brown was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferable as an ideal. But, for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.
Michigan Department of State Police v. Sitz, supra, at 2487.
The final factor noted in Brown concerns the severity of the interference with individual liberty. Again, we refer to the supreme court which found that the intrusion resulting from the brief stop at a sobriety checkpoint is minimal. Id., page 2486.
II CT Page 8-Q
The means of extrapolation, determining the plaintiff's BAC at the time of the offense to the test results, can be via the hearing officer's own expertise or through the taking of judicial notice if he notifies the parties in a timely manner "of his intent to rely on either his special expertise or judicial notice." Marshall v. DelPonte,27 Conn. App. 346. 352.
In the instant matter, the plaintiff was notified that the hearing officer would "rely on his own expertise in determining whether the test results indicate a blood alcohol content (BAC) of 0.1 or greater at the time of offense." Further, the plaintiff was provided at the hearing a certificate indicating that the hearing officer had attended a seminar entitled "Interpretation of Blood Alcohol Content Results Obtained From Blood, Urine or Breath Specimens."
The hearing officer did perform the extrapolation back to the time of arrest at the hearing. The plaintiff, through counsel did not attempt to contest the actual extrapolation back, nor did he take exception to the results at the time. "Because in extrapolation back to the time of CT Page 8-R operation, the blood alcohol would have been approximately .27 at the time of operation. I have no argument with that, but with the sobriety road checkpoint, however, it's our position that this is unconstitutional."
Thus, the hearing officer conducted himself in accordance with the mandates of Marshall v. DelPonte, supra, and his decision may not be overturned.
For the reasons set forth the decision of the defendant is sustained and the appeal is dismissed.
PICKETT, J.